# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| PUBLIX SUPER MARKETS, INC., and PUBLIX SUPER MARKETS INC. GROUP HEALTH BENEFIT PLAN<br><br>*Plaintiffs,*<br><br>v.<br><br>ABA CENTERS OF AMERICA, LLC, and ABA CENTERS OF FLORIDA, LLC (a/k/a ABA CARES OF FLORIDA, LLC)<br><br>*Defendants.* | Civil Action No. _____<br><br>**COMPLAINT**<br><br>**DECLARATORY AND INJUNCTIVE RELIEF REQUESTED**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Publix Super Markets, Inc. and Publix Super Markets, Inc. Group Health Benefit Plan, for their Complaint against ABA Centers of America, LLC and ABA Centers of Florida, LLC (a/ka ABA Cares of Florida, LLC), allege as follows:

## NATURE OF ACTION

1.    This case arises from a healthcare fraud scheme orchestrated by Defendants ABA Centers of America, LLC and ABA Centers of Florida, LLC (a/k/a ABA Cares of Florida, LLC) (together, the "ABA Centers" or Defendants). The ABA Centers have defrauded Plaintiffs Publix Super Markets, Inc. ("Publix"), a self-insured employer, and its Publix Super Markets, Inc. Group Health Benefit Plan (the "Plan" and, together with

Publix, "Plaintiffs"), out of millions of dollars through the submission of fraudulent medical claims in the State of Florida.

2.      The ABA Centers purport to provide Applied Behavior Analysis therapy services to individuals with autism spectrum disorder. Upon information and belief, ABA Centers controls all material aspects of its behavioral therapy businesses, including billing and collections.

3.      Both ABA Centers of America and ABA Centers of Florida appear to be part of larger association-in-fact that describes itself as a vertically integrated behavioral healthcare organization.[1]  It boasts itself as disrupting the industry through a "tech-centric modus operandi" and seems to operate across, at least, nine states – including Florida.

4.      Through an ongoing investigation, Publix and the Plan have determined that ABA Centers submitted millions of dollars in claims that were fraudulently induced, improperly coded and failed to satisfy Plan requirements with respect to, among other things, medical necessity determinations and prior authorization processes.

5.      The ABA Centers, with multiple locations in the Middle District of Florida, organized a racketeering scheme to induce Publix, through its claims administrator, to pay for claims submitted for services that never occurred and services that were not covered per the terms of the Plan, as well as overpay for excessively-priced claims, claims submitted with inaccurate CPT codes, incorrect places of service, duplicate claims and

---

[1] https://www.abacenters.com/best-in-business-list-in-health-services/#:~:text=ABA%20Centers%20is%20a%20vertically,at%20www.abacenters.com.

for services out of scope for this particular provider. These claims and bills, submitted by multiple different tax ID numbers to avoid detection, were false and fraudulent in nature and contained various, material misrepresentations or omissions that were integral to reimbursement decisions. ABA Centers engaged in this price gouging scheme to take advantage of families with children with autism.

6.     Among other things, ABA Centers has charged objectively excessive amounts for their supposed services. ABA Centers bills on average $500 for CPT codes where the network average is $13 for 15 minutes. These exorbitant charges go as high as $990 for a 15-minute increment—nearly $4,000 an hour—where the network average is $21.90, or $88 an hour.

7.     They have filed claims under multiple tax ID numbers, presumably in an effort to avoid detection by fraud prevention efforts of Publix, the Plan, and its agents. ABA Centers has suggested to patients that it can and will bill payers such as Publix and the Plan for treatment for activities that do not constitute proper treatment and medically necessary services. This excessive and improper billing scheme extended, at least, across the various locations of ABA Centers across Florida.

8.     This coordinated scheme began as far back as 2022 and continues to the present day. Plaintiffs' claims are subject to equitable tolling and the discovery rule due to Defendants' fraud.

9.     Through this fraud, Plaintiffs Publix and the Plan paid significantly more for certain claims for out-of-network Applied Behavior Analysis therapy services. Upon information and belief, the ABA Centers intentionally remain as out-of-network

providers so that they are able to exploit the billing loopholes they have created and/or identified. Their charges to Publix, the Plan and its members are many multiples of the customary cost charged by in-network providers.

10.    This was a purely profit-driven scheme and, upon information and belief, motivated by ABA Centers' desire to exponentially increase revenue in order to continue to market itself as one of America's fastest growing companies.  Among other things, Plaintiffs were induced by ABA Centers to incur more than $7 million in fraudulent claims.

11.    The ABA Centers are focused on explosive growth, boasting revenue growth of 32,000% over 3 years, and noting that they are substantial and sustainable without any private equity investment or significant debt financing. In the Southeast, ABA Centers was ranked No. 1 on a list of fast-growing private companies in 2024.  This is where their focus remains, and their racketeering scheme is essential to their business model and continued growth.

12.    Through this action, Plaintiffs seek: (i) damages from Defendants' acts; (ii) declaratory and injunctive relief; (iii) attorneys' fees and costs; and (iv) any other relief requested herein or that the Court deems just and proper.

## THE PARTIES

13.    Plaintiff Publix Super Markets, Inc. is a Florida corporation with its principal place of business in Lakeland, Florida.

4

14.    Publix operates Plaintiff Publix Super Markets Inc. Group Health Benefit Plan, a self-insured PPO Plan, which pays the majority of the total cost for health care coverage for its employees.

15.    Defendant ABA Centers of America, LLC is a Delaware limited liability company with its principal place of business in Fort Lauderdale, FL.[2]

16.    Defendant ABA Centers of Florida, LLC is a Florida limited liability company with its principal place of business in Fort Lauderdale, FL and an address of 110 East Broward Blvd., Fort Lauderdale, FL 33301.

## JURISDICTION AND VENUE

17.    This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C § 1331 because it arises under federal laws. Specifically, Publix asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. This Court also has subject-matter jurisdiction over Publix's state and common law claims under 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

18.    This Court has general and specific jurisdiction over ABA Centers of America and the ABA Centers of Florida, both of whom have their principal place of

---

[2]https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=ABACENTERSAMERICA%20M210000070100&aggregateId=forl-m21000007010-7fec13bd-f97f-4e52-b199-f5b0213ff0cc&searchTerm=ABA%20Centers&listNameOrder=ABACENTERSAMERICA%20M210000070100.

business in Florida, and systematically and continuously conduct business in Florida, including the acts that give rise to this lawsuit.

19.     Venue is proper in this District under 28 U.S.C. § 1391 because the ABA Centers of America and the ABA Centers of Florida reside in this District—two of the four ABA Centers of Florida locations listed on its website are located in the Middle District of Florida and nearly half of its members reside within the District.  Further, a substantial part of the events giving rise to the claims in this action occurred in this District.  Specifically, the ABA Centers submitted false and fraudulent bills for claims, while identifying its address as within this District.

<u>**THE IMPACTED HEALTH BENEFIT PLAN**</u>

20.     Publix is a large supermarket chain, located mainly in the southeastern United States, and operates its own Group Health Benefit Plan, thereby paying the majority of the total cost for health care coverage for its employees under this Plan.

21.     The Plan and Publix, as the self-insured sponsor of the Plan through which its enrolled employees pay via payroll deductions in exchange for payment of their healthcare claims via Plan funds, were induced to pay Defendants as part of the improper billing scheme they orchestrated.

22.     Publix and the Plan deliver these services pursuant to the written terms of the Plan, which identifies the rights and obligations of each party.  Plaintiffs use the services of a claims administrator to process Publix employees' healthcare claims and pay those claims from funds contributed by Publix and its employees.

23.    The Plan functions in accordance with the terms of the insurance policies, contracts, and/or plan documents, which establish, among other things, the rights and responsibilities of the payor, Publix, any claims administrator, and of the individuals who have enrolled in the policies, contracts, and/or plans (i.e., Publix employees).

## THE ABA CENTERS

24.    The ABA Centers hold themselves out as a "best in class" business with experience in Autism Spectrum Disorder ("ASD") and applied behavior analysis. While holding themselves out as having the mission to "guide families through the process, providing the tools and support needed to improve the quality of life for children with autism and their families," in reality ABA Centers is a profit-making vehicle that churns claims and price gouges families with autistic children who are members and payers, such as Plaintiffs, by submitting inflated, improper and excessive medical claims.

## FRAUDULENT BILLING PRACTICES OF ABA CENTERS

25.    Publix and the Plan have determined that ABA Centers submitted millions of dollars in inflated claims, as well as claims that were improperly coded and failed to satisfy Plan requirements with respect to, among other things, medical necessity determinations and prior authorization processes.

26.    The ABA Centers, with multiple locations in Florida, organized a scheme to induce Plaintiffs, through their claims administrator, to pay for claims submitted for services that never occurred and services that were not covered per the terms of the Plan,

7

as well as overpay for excessively-priced claims, claims submitted with inaccurate CPT codes, incorrect places of service, duplicate claims and for services out of scope for this particular provider. These claims and bills, submitted by multiple different tax ID numbers to avoid detection, were false and fraudulent in nature and contained various, material misrepresentations or omissions that were integral to reimbursement decisions. This excessive and improper billing scheme extended, at least, across the various locations of ABA Centers across Florida.

27. This coordinated scheme began as far back as 2022 and continues to the present day.

28. The excessive and improper billing scheme by the various ABA Centers across Florida included, but was not limited to:

a. Numerous submissions to the Plan of excessively-billed charges;

b. billing for psychiatric services that, according to the Plan member, were not the services received by their child;

c. excessive and widespread fraud, fee-forgiveness and/or unfair business practices, including price gouging  members and charging them exorbitant out-of-network amounts, or alternatively never intending to and/or actually requiring the members to pay the significant cost-shares required by the Plan in order for them to receive services from ABA Centers; and

d. double billing for services that occurred with less frequency than the billed charge-dates suggest or for services that already occurred in a school setting and were not separately reimbursable;

8

29.     These allegations are substantiated by a steady rise in reimbursement claims received by Publix and the Plan.

30.     They are further substantiated by ABA Centers billing practices.  ABA Centers bills on average $500 for CPT codes where the network average is $13 for 15 minutes.  These exorbitant charges go as high as $990 for a 15 minute increment—nearly $4,000 an hour—where the network average is $21.90, or $88 an hour.

31.     They are further substantiated by complaints delivered to the Plan and/or Plan administrator by Plan members.

32.     Various Plan members lodged complaints relating to double billing and excessive billing noting that the very large sums of money being delivered to them via check, intending to be passed along to the ABA Centers for reimbursement, alerted them to the fact that the ABA Centers were billing for duplicate or excessive amounts when compared to the services offered to their autistic children.

33.     In one instance, a Plan member reported that, even though the nature and quantum of the services rendered to their child had not changed, ABA Center's billed charges increased significantly.

34.     Plan members also lodged complaints about charges and reimbursement for psychiatric and psychologic services that did not occur or were different than the services actually received.

35.     In one instance, a Plan member noted that their son was not getting any psychiatric services; another member noted that their son was to be treated once a week but that someone was showing up to their home three times a week and charging for it.

36.    Further, it was reported to the claims administrator that ABA Center technicians were accompanying Plan members and their children on vacations/recreational trips which were being coded as "other." The Plan, however, specifically excludes coverage for custodial care and personal comfort services.

37.    Nonetheless, the ABA Centers submitted such claims for reimbursement, against Plan terms, and coded them so the claims administrator, without further diligence, would not see that it was an excluded service.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS

### COUNT ONE
### VIOLATION OF RICO, 18 U.S.C. § 1962(c)

38.    Plaintiffs incorporate by reference as fully set forth herein the allegations in paragraphs 1 through 37.

### The RICO Enterprise

39.    The ABA Centers constitute an Enterprise (the "Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

40.    These entities are associated-in-fact for the common purpose of carrying on an ongoing unlawful Enterprise. Specifically, the Enterprise has a common goal of submitting false and fraudulent claims for services allegedly performed by individuals working at the ABA Centers.

41.    Since at least 2022 and continuing through the present, the members of the Enterprise have had ongoing relations with each other through common control/ownership, shared personnel and continuing submissions of false and

fraudulent bills and claims for services submitted to Plaintiffs and/or their claims administrator for payment from the Plan.

42.     As set forth above, the Enterprise's conduct constitutes "fraud by wire" within the meaning of 18 U.S.C. § 1343, which is "racketeering activity" as defined by 18 U.S.C. 1961(1). Its repeated and continuous use of such conduct to participate in the affairs of the Enterprise constitutions a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

### The Pattern of Racketeering Activity

43.     The racketeering acts set forth herein were carried out over a multi-year period, were related and similar, and were committed as part of ABA Centers' scheme to defraud Plaintiffs.

44.     On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as the component parts of the Enterprise continue to submit and pursue collection on false and fraudulent bills to the present day.

45.     As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, ABA Centers caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Publix and the Plan and to induce Plaintiffs, through their claims administrator, to issue checks to the Enterprise based upon materially false and misleading information.

46.    Through the Enterprise, ABA Centers submitted or caused to be submitted fraudulent claim forms seeking payment for healthcare services allegedly provided to the Plan's members.

47.    The bills and supporting documents that were sent by ABA Centers, as well as the payments that Publix, through its claims administrator, made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, ABA Centers engaged in a continuous series of predicate acts of mail fraud.

48.    Each submission of a fraudulent claim constitutes part of a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

49.    By reason of ABA Centers' violation of 18 U.S.C. § 1962(c), Publix and the Plan have been injured in its business or property, and damaged in the aggregate amount presently in excess of $7 million, the exact amount to be determined at trial.

50.    As a direct and proximate result of the false and fraudulent claims sent by the Enterprise to Plaintiffs and their claims administrator, Publix and the Plan were defrauded and incurred damages that well-exceeded the amount paid to ABA Centers for alleged medical services that did not occur, were not medically necessary, were duplicative, not in accordance with the Plan terms or that occurred at places of service different than those recorded on the claim forms.

51.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from ABA Centers treble damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## COUNT TWO
## RICO CONSPIRACY UNDER 18 U.S.C. § 1962(d)

52.     Plaintiffs incorporate by reference as fully set forth herein the allegations in paragraphs 1 through 51.

53.     The ABA Centers have unlawfully, knowingly, and willfully, combined, conspired, confederated, and agreed together to violate 18 U.S.C. § 1962(c) as describe above, in violation of 18 U.S.C. § 1962(d).

54.     By and through each of the Defendant's business relationships with one another, their close coordination with one another in the affairs of the Enterprise, and the frequent submissions of claims by the Defendants in order to defraud Publix and the Plan by requesting vast overpayment for fraudulent and false bills, each Defendant knew the nature of the Enterprise and each Defendant knew that the Enterprise extended beyond each Defendant's individual role.   Moreover, through the same connections and coordination, each Defendant knew that the other Defendants were engaged in a conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1962(c).

55.     Each Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the Enterprise's affairs in order to defraud Publix and divert Plan funds , in violation of 18 U.S.C. § 1962(c).  In particular, each Defendant was a knowing, willing, and active participant in the Enterprise and its affairs, and each of the Defendants shared a common purpose, namely, the orchestration, planning, preparation, and execution of the scheme.

56.     Each Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the Enterprise's affairs in order to commit mail and wire fraud through a pattern of racketeering activity in violation of 18 U.S.C. 1962(c).

57.     The participation and agreement of each of Defendant was necessary to allow the commission of this scheme.

58.     Publix and the Plan have been and will continue to be injured in its business and property by reason of the Defendants' violations of 18 U.S.C. § 1962(d), in an amount to be determined at trial.

59.     The injuries to Publix and the Plan directly, proximately, and reasonably foreseeably resulting from or cause these violations of 18 U.S.C. § 1962(d) include, but are not limited to, millions of dollars lost by Publix and the Plan due to Defendants' fraudulent racketeering activity.

60.     Plaintiffs have also suffered damages by incurring attorneys' fees and costs associated with exposing and prosecuting Defendants' criminal activities.

61.     Pursuant to 18 U.S.C. § 1964(c), Publix is entitled to treble damages, plus costs and attorneys' fees from the Defendants.

### COUNT THREE
### FRAUD/FRAUDULENT BILLING PRACTICES

62.     Plaintiffs incorporate by reference as fully set forth herein the allegations in paragraphs 1 through 61.

63.     The submission of a claim for reimbursement to Publix and the Plan, through their claims administrator, constitutes a certification and representation that the information shown on the claim is true, accurate, and complete, and that the submitted claim does not knowingly or recklessly disregard or misrepresent or conceal material facts.

64.     Each time the ABA Centers submitted a claim or caused a claim to be submitted they represented that they performed the services being billed and, thus, were entitled to reimbursement for those services.

65.     Yet, those services came with excessive, improper and duplicative charges; were for services never received or that were not medically necessary; were specifically excluded via the Plan terms and were mis-coded to hide for that fact; or were coded at places of service that were inaccurate, rendering the claim improper for payment and each such representation in the claim as false.

66.     Thus, these misrepresentations were material to Plaintiffs' determination of whether the claims at issue billed by the ABA Centers were proper for reimbursement.

67.     The ABA Centers made these misrepresentations with the intent to wrongfully induce Publix to pay.

68.     Plaintiffs reasonably relied on these misrepresentations by the ABA Centers and paid the claims. Because Publix's claims administrator processes an overwhelmingly high volume of claims per day, the vast majority are adjudicated by their claims processing systems, trusting that the information submitted on the claims is accurate.

69.     Due to the volume of claims that the claims administrator processes, they may not be able to investigate the accuracy of each claim before making the decision for Publix and the Plan to fully pay those claims.

70.     Thus, Plaintiffs relied on the ABA Centers representations that the information on the claims was true, accurate, and complete, that it provided the services billed, and did not knowingly or recklessly disregard, misrepresent, or conceal material facts.

71.     The ABA Centers also omitted material information from Publix, the Plan and the claims administrator.

72.     Because of their reliance on these misrepresentations, and the omissions that Defendants knowingly made, Publix and the Plan were damaged.

73.     Thus, Plaintiffs are entitled to an award of damages in an amount to be proven at trial.

## COUNT FOUR
## NEGLIGENT MISREPRESENTATION AND OMISSION

74.     Plaintiffs incorporate by reference as fully set forth herein the allegations in paragraphs 1 through 73.

75.     This cause of action is pleaded in the alternative to the cause of action for fraud.

76.     The submission of a claim to Publix, the Plan, or its claims administrator constitutes a representation that the information shown on the claim is true, accurate

and complete, and that the submitted claim did not knowingly or recklessly disregard or misrepresent or conceal material facts.

77.    Each time ABA Centers submitted, or caused to be submitted a claim, they represented that the information shown on the claim is true, accurate and complete.

78.    But, in fact, it was not.  Instead, these claims were, among other things, (1) for services that came with excessive, improper and duplicative charges; (2) for services never received or that were not medically necessary; (3) for services specifically excluded via the Plan terms and were mis-coded to hide for that fact; or (4) for services coded at places of service that were inaccurate, rendering the claim improper for payment.  They were often submitted through multiple tax IDs so that their fraudulent pattern could not be identified.

79.    These representations were material to Publix, the Plan, and the claims administrators' determination of whether claims submitted and billed by ABA Centers were properly payable.

80.    ABA Centers made the aforementioned misrepresentations and omissions with the intent to wrongfully induce Publix and the Plan to make payment on the claims.

81.    ABA Centers also attempted to conceal these actions and ensure that Publix, its claims administrator and the Plan did not discover that the submitted claims contained false statements and misrepresentations and were part of an overarching billing scheme. As described above, they specifically concealed:

17

a.      excessively-billed charges;

b.      billing for services that, according to the Plan members, were not the services received by their children;

c.      excessive and widespread fraud, fee-forgiveness and/or unfair business practices, including price gouging members and charging them exorbitant out-of-network amounts, or alternatively never intending to and/or actually requiring the members to pay the significant cost-shares required by the Plan in order for them to receive services from ABA Centers;

d.      double billing for services that occurred with less frequency than the billed charge-dates suggest or for services that already occurred in a school setting and were not separately reimbursable;

e.      billing for services at a certain place of service that was inaccurate or different from where the service actually took place;

f.      the submission of claims for reimbursement for services categorized as "other" which were, in fact, services excluded by the Plan terms.

82.     Those representations were false, and ABA Centers either knew the representations were false, made them without knowledge of their truth or falsity, or made them under circumstances in which ABA Centers ought to have known of their falsity.

83.     ABA Centers intended or expected that Publix, the Plan, and their claims administrator would rely on their misrepresentations in paying claims and/or continuing its relationship with ABA Centers.

84.     Plaintiffs justifiably relied on these misrepresentations and were damaged as a result by making payments on the claims that were submitted.

85.     ABA Centers had a duty to disclose to Plaintiffs information material to the claims they were submitting for reimbursement.

86.     By virtue of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be proven at trial.

## COUNT FIVE
## UNJUST ENRICHMENT

87.     Plaintiffs incorporate by reference as fully set forth herein the allegations in paragraphs 1 through 86.

88.     The ABA Centers are liable under the principle of unjust enrichment.

89.     The ABA Centers used wrongful conduct to obtain a benefit to which it is not entitled.

90.     The ABA Centers submitted claims and/or caused claims to be submitted to the claims administrator that Publix and/or the Plan would not have paid but for the wrongful conduct of ABA Centers as described herein.

91.     When Plaintiffs paid for services they were not obligated to cover, ABA Centers received a benefit from Publix and the Plan.

92.     As a result, ABA Centers have been unjustly enriched and Publix and the Plan and its member-employees have been injured.

93.     It would be inequitable for ABA Centers to retain amounts Publix and the Plan paid as a result of ABA Centers wrongful conduct alleged herein.

94.    Plaintiffs lack an adequate remedy at law for the injuries inflicted by ABA Centers, and accordingly seek the return of that money in equity to compensate them.

**COUNT SIX**
**VIOLATION OF FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**

95.    Plaintiffs incorporate by reference as fully set forth herein the allegations in paragraphs 1 through 94.

96.    The ABA Centers are, and have been, engaged in trade and commerce in the State of Florida.

97.    The ABA Centers has sought to specifically harm Florida consumers in the execution of their deceptive and fraudulent scheme.

98.    Publix, the Plan and its employees (the Plan members) are consumers under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See* Fla. Stat. § 501.203(7).

99.    Publix and the Plan have been injured by ABA Centers' unfair or deceptive practices in the course of buying and paying for medical services that it rendered unlawfully and sold in the State of Florida.

100.    The ABA Centers' business practices constitute both *per se* and traditional violations of FDUTPA.

101.    The ABA Centers' acts and practices described above, constitute *per se* FDUTPA violations because they violate statutes that proscribe unfair methods of competition and unfair, deceptive, or unconscionable acts or practices, including Fla. Stat. § 817.234 (prohibiting false and fraudulent insurance claims).

20

102.   The ABA Centers' unlawful acts and practices affected many claims for services rendered in Florida and have caused significant economic harm to Publix, the Plan and its member-employees, and caused Publix and the Plan to make substantial payments, to the benefit of ABA Centers, that they were not obligated to make.

103.   The ABA Centers' acts and practices also constitute traditional violations of FDUTPA.

104.   The ABA Centers' unfair trade practices and deceptive acts that comprised their inappropriate billing scheme misled Publix and the Plan and caused them to make substantial payments to ABA Centers that were not owed and would not have been paid but for ABA Centers' conduct.

105.   Plaintiffs seek damages for benefits paid on the unlawful and deceptive claims submitted, or caused to be submitted, by ABA Centers to Publix or its claims administrator, plus its attorney's fees, costs, and interest; a declaratory judgment declaring the ABA Centers' acts and practices unfair and deceptive and in violation of FDUTPA.

106.   Publix and the Plan additionally seek an order enjoining the ABA Centers from continuing to engage in unfair and deceptive acts and practices; and any other relief the Court deems just and proper.

107.   By virtue of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be proven at trial.

## COUNT SEVEN
## DECLARATORY AND INJUNCTIVE RELIEF UNDER
## ERISA § 502(a)(3) AND 28 U.S.C. §§ 2201 AND 2202

108.    Plaintiffs incorporate by reference as fully set forth herein the allegations in paragraphs 1 through 107.

109.    Publix offers its health benefit plan, the Plan, for certain health services governed by ERISA.

110.    Publix and the Plan maintain an administrative services agreement(s) with their claims administrator that details the rights and obligations of Publix, the administrator and the Plan.

111.    The administrative services agreements and/or plan documents delegates to Publix, the Plan, and the administrator the authority to interpret the benefit plans and determine claims for benefits.

112.    The administrative services agreements and/or plan documents also give Publix, the Plan, and the administrator discretion and authority to monitor and pursue overpayment of funds from the Plan, including overpayments resulting from fraud, waste, or abuse through litigation.

113.    Publix and the Plan have standing under ERISA § 502(a)(3) and 29 U.S.C. § 1132(a)(3) to seek declaratory and injunctive relief to enjoin any acts or practices that violate the provisions of the Plan and to obtain other appropriate relief to redress violations of and enforce benefit plan terms.

114.    The Plan is not required to pay for fraudulent claims.

115. As described above, including through improper, inaccurate and fraudulent claims submissions, ABA Centers caused the overpayment of funds on behalf of the ERISA-governed benefit Plan in violation of the Plan's terms and Publix and the Plan are authorized to recover such overpayments and to put a stop to continued efforts to defraud and obtain overpayments from the Plan.

116. Based on information and belief, ABA Centers continues to engage in a pattern of fraudulent and tortious activity presently, including continuing to bill for services that never occurred and services that were not covered per the terms of the Plan, as well as overbill for excessively-priced claims, claims submitted with inaccurate CPT codes, incorrect places of service, duplicate claims and for services out of scope for this particular provider.

117. All such claims are clearly fraudulent claims and/or claims with material misrepresentations, and in violation of the Plan's terms.

118. There is an actual case and controversy between Publix and the Plan (on the one hand), and ABA Centers (on the other hand) relating to the claims fraudulently submitted and paid for by funds set aside by Publix for the Plan.

119. Accordingly, Plaintiffs seek an Order:

    a. Enjoining ABA Centers from any improper billing practices; and

    b. Enjoining ABA Centers from transferring or dissipating funds paid by Publix on behalf of the Plan.

23

120.    There is no other remedy available at law to prevent the irreparable harm that will result as to Publix and the Plan if the ABA Centers are permitted to continue engaging in the conduct described herein.

121.    There is also a present need for a declaration as to the unlawfulness of the ABA Centers' conduct as the ABA Centers continue to submit false and fraudulent claims to Publix, the Plan, and the claims administrator for payment under the Plan.

122.    Accordingly, Plaintiffs further seek an Order declaring that:

a.    The false and fraudulent claims containing material misrepresentations and omissions billed by ABA Centers are not covered services under the ERISA Plan;

b.    ABA Centers received overpayments from the ERISA Plan for services rendered by ABA Centers that were submitted as false and fraudulent claims containing material misrepresentations and omissions; and

c.    Those false and fraudulent claims billed by ABA Centers are not payable under the ERISA-governed Plan on a go-forward basis.

## JURY DEMAND

Plaintiffs request a jury trial as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request an award in their favor granting the following relief:

a.    An award of compensatory damages as requested herein;

b.    Treble damages under RICO;

c.      An award of punitive and exemplary damages;

c.      Equitable and declaratory relief as requested herein;

d.      Costs;

e.      Reasonable attorney fees, including under RICO;

f.      Prejudgment and post-judgment interest; and

g.      An award of any other relief in law or equity that the Court deems just and proper.

Dated: August 26, 2025.          Respectfully submitted,

*s/ Anne Marie Estevez*
Anne Marie Estevez
Florida Bar No. 991694
aestevez@morganlewis.com
Clay M. Carlton
Florida Bar No. 85767
clay.carlton@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Brickell Avenue, Suite 1600
Miami, FL 33131
Telephone: 305.415.3000
Facsimile: 305.415.3001

Brian W. Shaffer (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Facsimile: 215.963.5001

*Attorneys for Plaintiffs*